Charles Koski, Appellee, v. Edward Finder et al., Appellants.

Gen. No. 17,813.

1. MECHANICS' LIENS—*recovery upon a quantum meruit.* On a bill by a contractor to foreclose an alleged mechanic's lien, if the contract was not fully performed, recovery, if at all, must be upon a *quantum meruit.*

2. BUILDING AND CONSTRUCTION CONTRACTS—*when improper performance is fault of contractor.* Where the specifications and contract require that the basement of a building shall be of a certain height, habitable and conform to ordinances as to height and size of windows, and an experienced contractor, after the building is partly erected, lessens the height of the basement by filling in the basement excavations made by the owner so that the basement might be properly drained, and makes the windows of a certain size and height contrary to the ordinances, *held* under conflicting evidence, that the failure to fulfill the contract properly was the fault of the contractor.

3. BUILDING AND CONSTRUCTION CONTRACTS—*delay caused by strike.* A delay in the completion of a building is not excused by a strike where the contract does not so provide.

4. BUILDING AND CONSTRUCTION CONTRACTS—*when contractor cannot recover surveying charge.* A recovery by a building contractor against an owner for having the premises surveyed is not sustained where the name of the surveyor does not appear in the record and a receipted bill was not produced.

Appeal from the Circuit Court of Cook county; the HON. JOHN GIBBONS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Reversed and remanded. Opinion filed January 14, 1913.

CHENEY & EVANS and WHITE & WILSON, for appellants.

WILLIAM A. DOYLE, for appellee; JOSEPH J. THOMPSON, of counsel.

MR. PRESIDING JUSTICE CLARK delivered the opinion of the court.

This is an appeal from a decree entered upon a bill filed for the foreclosure of an alleged mechanic's lien. The bill recites that a contract was entered into on July 8, 1905, between the appellee, Charles Koski, and the appellants, Edward Finder and Sallie Finder, who were the then owners of the property, for the construction of a two-story frame building, at an agreed price of $5,100, the building to be finished on or before November 1, 1905; that on August 31, 1905, a supplemental agreement was entered into for the furnishing of "extra labor and material consisting of sink and

toilet, surveying said premises, plans, insurance, repairs, shingles, platform and stairs, molding, changes in bathtub and stand, etc., at an agreed price of $221.75;" that $4,900 had been paid, and that $421.75 remained due with interest. The answers admitted that the contract was entered into for the construction of the two-story building; stated that the contract was in writing; denied that the building was to be finished on or before November 1, 1905, but that by the terms of the contract it was to be completed on the last day of August, 1905; denied entering into the supplemental agreement; admitted that Koski constructed the building, but denied that he furnished all the material; denied that the building was constructed in accordance with the specifications, and denied that anything was owing by the appellants or either of them to the appellee. A cross-bill was filed setting out that the contract was in writing, the contract being attached as an exhibit and made part of the cross-bill. It alleges that the contract was not fulfilled, in that three crosswalls in the basement were not constructed as required; that the height of the basement was about six feet two inches, while the contract required that it should be eight feet clear; that the basement was not constructed so as to be convenient for two tenant apartments of four rooms each; that the building ordinances of the City of Chicago were not complied with in respect to the size of the windows in the basement; that the building was not completed on August 31, 1905, as required by the contract, but that Koski discontinued his work on it in November, 1905; that appellants Sallie Finder and Edward Finder procured a loan of the King Sigmund First Building and Loan Association, of which the said appellee Koski was president; that the amount was to be paid in instalments, the last instalment of $1,600 to be paid when the whole building was completed; that the appellants refused to authorize the Building and Loan Association to make the last payment of $1,600 because the

building had not been completed in conformity with the contract; but that the said Koski, acting as president of said association, caused the same to pay to him the said $1,600; that because the said building was not constructed to conform to the ordinances of the City of Chicago, as required by the contract, it was of much less value than it would have been had the contract been complied with; that the appellants have lost rents and profits which would have accrued had said building been completed at the time provided, and that there was due to appellants in excess of the amount claimed by the said Koski the sum of $2,500. An answer was filed to the cross-bill.

There was a reference of the cause to a master in chancery, who found: that the contract had been fully performed and that there was a balance due thereunder of two hundred dollars; also that there was a balance due for bath plumbing eighty-five dollars, plans thirty-five dollars, surveying ten dollars, lowering platform fifty dollars, one sink back and pipe and drops eighteen dollars, repairing water closets eighteen dollars, total. $416. To this sum interest was added and a decree entered substantially in conformity with the master's report, excepting that the master recommended that the cross-bill be dismissed for want of equity. This recommendation was not carried into the decree.

We have examined with great care the evidence contained in the record, and have come to the conclusion that the contract sued upon was not fully performed, and that therefore recovery by appellee, if at all, must be upon a *quantum meruit*. Taylor v. Renn, 79 Ill. 181. There is the distinct provision in the contract, "Basement to be eight feet clear with stone and brick." It was further provided that the basement was to be divided into compartments of four rooms each and supplied with water sinks, white backs, water closets and sewer "according to City Ordinance." The ordinance of the City of Chicago introduced in the record

provides that the window opening in every habitable
room shall be at least one-tenth of the floor area of the
room, while the evidence shows that the window open-
ings in no room of the basement exceeded two and
one-half per cent. of the floor area of such room. The
same section of the ordinance also provides that the top
of at least one window in every habitable room shall
be at least seven feet above the level of the floor, while
the record in this case shows that no window in any
of the rooms in the basement was seven feet above the
level of the floor. At the highest point the basement
was only six feet, one and three-fourths inches.

It is argued on behalf of the appellee that he did
all that was necessary to make the basement "eight
feet clear" by building in the excavation which was
made by the owner and in which he was directed to
build the foundation walls of the proper dimensions
and material; that he did build a foundation wall of
eight feet four inches in height, which would when fin-
ished leave a clear space of eight feet between the floor
and the ceiling of the basement; that after the build-
ing was partly erected and the work so far advanced
that both floors were plastered it was discovered that
the outlet for sewerage was higher than (the bottom
of) the excavation, and consequently there would be
no fall for the purpose of drainage from the base-
ment, and that when the discovery was made it was
agreed between the contractor and the owner that cin-
ders should be put in the bottom of the excavation, at
the cost of the owner, sufficient to raise the floor of the
basement so that it could be properly drained. We do
not think that the record bears out the contention of
the appellee in this regard. Appellee, who apparently
was an experienced contractor, agreed to construct a
basement that should be habitable. The location of the
sewer was easily ascertainable, and under the contract
the plumbing was to be put into the building by the
contractor and a sewer was to be built "from the curb
to the rear." The upper stories of the building were

of frame construction, and we agree with counsel for appellants that it was appellee's duty to advise himself of the conditions before erecting these upper stories, and to build a wall high enough so that the basement when completed would be eight feet clear.

Appellee did not testify to any conversation which can be construed to be an agreement between the parties, made after the written contract was entered into, that the basement should be less than "eight feet clear," as provided by the written contract. He was permitted to testify, over objection on rebuttal in response to a question as to the full height of that wall, as follows: "Eight feet and four inches; they put in cinders after it was built because it was too high. When the building was started and we had the second story plastered, we couldn't fix the basement; the sewer was eight inches too high in the back of the building because the excavation of the building was too deep. The basement wasn't too deep, but we got to raise the sewer; the sewer came high in the basement. The sewer outlet outside of the street was so high that there couldn't be any drainage from the basement. Finder then bought some cinders and put in there to make it level."

The question when and by whom the cinders were ordered is a matter about which there is much conflict in the testimony. One McCarthy, a witness for the appellee, testified that the hauling of the cinders was done with his team; that it was done at two different times; that the second loads were hauled a month or two after the first, and that on the second occasion he was told by the appellee, Koski, to bring six or seven loads, which he did.

It is argued by the appellee "that the digging of the excavation was the act of the owner and if it caused a defect, that defect is attributable to the owner." One Ezaski, a witness for the appellee, testified as follows: "I worked in the Finder building. When

we started on the building all was excavated, seven feet deep. We dug down about a foot, something below the excavation of the building. I call it a footing.'' He further testified: ''When I started to work the sewer was in. There was nothing in there then, just the excavation. I helped with these cinders. Koski was there directing us what to do.'' The appellee also testified that the excavation he found on the premises was seven feet deep. The appellee and other witnesses on his behalf testified that the total height of the stone and brick wall was eight feet four inches. They further testified that two feet six inches of stone and three feet six inches of brick protruded above the surface of the ground. If they were correct in this particular it must follow that there was a very considerable filling in of the excavation; otherwise the total height of the brick and stone foundation must have been thirteen feet. If, as claimed by the appellants, the excavation was but four feet deep, and if it be assumed that the wall was eight feet four inches in height, it would still be required that two feet of the excavation be filled in, in order that the height of the wall, when completed, should be six feet above the ground. Whatever may be the fact in respect to the matter, it forms no basis, in our opinion, for the conclusion that there was an agreement between the parties whereby the basement in the completed building was to be less than eight feet in height.

It is apparent that the openings for the windows in the basement were not made of the proper height to conform to the ordinance and thus render the basement habitable for tenants, as required by the contract. These openings were made before the appellee discovered the height of the sewer, if his testimony is to be believed. It therefore follows that he did not at any time intend to construct the basement in such a manner as to comply with the terms of the contract.

We are unable to agree with the appellants that the contract was not complied with in respect to the cross-

walls.   The delay of more than two months in the completion of the building is claimed by appellee to have been caused by a strike of the building trades. The contract does not make a strike an excuse for delay, and we think there is merit in the contention of the appellants that the delay entailed a loss upon the owner of $102.

With respect to the allowance for extras, it is to be observed that in statements admitted by appellee to have been rendered to appellants, and which the appellee stated in his testimony he had prepared from his books of account, the claim was for but $167 for the items mentioned in the bill of complaint, and which were allowed by the decree in the sum of $216.   The original statement also included an item of twenty-one dollars for court fines, which it would appear were assessed against Koski and two of the appellants for violation of the building ordinance with respect to the construction of a stairway.   This claim, however, was abandoned.   In the original statement the amount claimed for plans was twenty dollars; at the hearing it was thirty-five dollars, and this amount was allowed. No reference in the contract is made to plans, although the contract includes specifications for the building. We do not think that the contention of the appellee that the appellants agreed to pay for these plans (if any were made) is sustained by the record.   In the decree an allowance of fifty dollars was made upon the item for raising a platform.   In the original statement the charge was forty-two dollars.   The work appears to have been done more than a year after possession of the building was taken by the appellants, and we are of the opinion that an allowance should have been made for this item as an extra.   The appellants admit that there was a proper charge for repairing two water closets.   The amount allowed was eighteen dollars.   The statement rendered fixed the value of this work at twelve dollars.   The decree also included an item of ten dollars for surveyor's charges.

In our opinion the record does not show that this charge was authorized by the appellants or that any agreement was made for the employment of a surveyor. The name of the surveyor does not appear in the record, nor was any receipted bill produced. We think this item should have been disallowed. The item for one sink back and end pipes and traps seems to be warranted as a proper charge of extra; and also an item for extra bathtub and washbowl, supplied with hot and cold water. The amount allowed was eighty-five dollars. In the original statement the item appeared as sixty-five dollars, but this the appellee testified was by mistake. The subcontractor who did the work and furnished the material testified that he was paid eighty-five dollars by appellee, and we think that this sum should properly be allowed as an extra.

As heretofore stated, the master recommended that the cross-bill be dismissed. The decree does not in terms dismiss the cross-bill, nor does it appear to have been disposed of in any way by order of court. After careful perusal of the record, we are of the opinion that there should be an accounting upon the cross-bill.

The decree of the circuit court will be reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded.*